IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEELWORKERS PENSION TRUST<br>by DANIEL A. BOSH, CHAIRMAN, | )<br>)<br>) |
| Plaintiff, | )    CIVIL ACTION NO. |
| v. | )<br>)<br>) |
| THE RENCO GROUP, INC., ILSHAR<br>CAPITAL LLC, BLUE TURTLES, INC.,<br>UNARCO MATERIAL HANDLING, INC.,<br>ITEVA PRODUCTS LLC, THE DOE RUN<br>RESOURCES CORPORATION, and<br>US MAGNESIUM LLC, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## COMPLAINT

Plaintiff, Steelworkers Pension Trust by Daniel A. Bosh, Chairman (the "SPT") files the following Complaint:

## INTRODUCTION

1. The SPT brings this action to collect over $112 million as the result of Defendants' failure to submit withdrawal liability payments (known as "interim payments") that Defendants were required to make to the SPT under ERISA's Pay Now-Dispute Later Rule, 29 U.S.C. §1399(c)(2), and pursuant to an Order entered by the Arbitrator in an on-going ERISA arbitration between the parties.

## JURISDICTION AND VENUE

2. This is an action under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §1001 et seq. (1982) (hereinafter collectively referred to as "ERISA"), for the collection of interim withdrawal liability payments, interest, liquidated damages, costs and

attorneys' fees incurred as the result of Defendants' failure to make withdrawal liability payments pending their dispute of such liability as required by ERISA.

3. This Court has jurisdiction over this action under §§502(a)(3), 502(e), 502(f), and 4301(c) of ERISA, 29 U.S.C. §§1132(a)(3), 1132(e), 1132(f) and 1451(c).

4. Venue is proper under §§502(e)(2) and 4301(d) of ERISA, 29 U.S.C. §§1132(e)(2) and 1451(d), in that the SPT is administered at its principal place of business at 60 Boulevard of the Allies, Suite 600, Pittsburgh, Pennsylvania, 15222. Moreover, the parties agreed to venue in the Western District of Pennsylvania in a Tolling Agreement Extension dated January 28, 2015.

## PARTIES

5. The SPT is a non-profit, multiemployer defined benefit pension plan within the meaning of ERISA, 29 U.S.C. §§1002(37) and 1301(a)(3).

6. Daniel A. Bosh is the Chairman of the SPT and is authorized to bring this action on its behalf.

7. The SPT has been providing monthly retirement benefits to its participants and their families since 1953. These pension benefits are funded by employer contributions negotiated by various labor unions. The SPT has over 500 contributing employers and over 112,000 participants.

8. The Renco Group, Inc. ("Renco") is a private holding company with annual revenues of over $5 billion. It is a New York corporation with its principal place of business at One Rockefeller Plaza, 29th Floor, New York, New York.

9. Ilshar Capital LLC, Blue Turtles, Inc., Unarco Material Handling, Inc., Inteva Products LLC, the Doe Run Resources Corporation and US Magnesium LLC are wholly-owned subsidiaries of Renco (collectively referred to, along with Renco, as "Defendants").

## RENCO PURCHASES RG STEEL AND
## CREATES THE RG STEEL CONTROLLED GROUP

10. In 2011, Renco purchased several steel mills that employed thousands of employees who were members of the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union ("United Steelworkers").

11. The steel mills were "contributing employers" to the SPT.

12. A "contributing employer" under ERISA is an entity that has a contractual obligation to make contributions to a pension plan, such as the SPT.

13. After the purchase, Renco operated those steel mills under several variations of the name RG Steel (those entities will hereinafter be referred to as "RG Steel").

14. RG Steel remained a contributing employer to the SPT after the Renco purchase. In fact, RG Steel was the third largest contributing employer of the SPT.

15. As a contributing employer to the SPT, RG Steel would owe the SPT for it's pro rata share of any unfunded pension liabilities should it partially or completely withdraw from the SPT.

16. "Withdrawal liability" is a contributing employer's pro-rata share of a multiemployer, defined benefit pension plan's unfunded vested benefits. 29 U.S.C. §1381(b)(1).

17. ERISA provides for withdrawal liability in order to protect multiemployer pension plans (such as the SPT) by requiring employers who withdraw from such plans to pay their share of any unfunded vested benefits. 29 U.S.C. §1381(b)(1).

18. Withdrawal liability is intended to: (A) ensure that the financial burden of the vested pension benefits of a contributing employer's employees will not be shifted to the other contributing employers of the pension plan; and (B) eliminate any incentive for a contributing

employer to withdraw from a pension plan to avoid funding its employees' vested pension benefits.

19. Not only is a contributing employer liable for any withdrawal liability that it incurs, but so too are members of the contributing employer's "controlled group," who are jointly and severally liable along with the contributing employer. 29 U.S.C. §1301(b)(1).

20. An entity is part of a contributing employer's controlled group if it owns at least 80% of the contributing employer. 26 C.F.R. §1.414(c)-2(b).

21. Because Renco owned 100% of RG Steel, Renco was part of the "RG Steel Controlled Group."

22. Since Renco owned at least 80% of the other Defendants (namely Ilshar Capital LLC, Blue Turtles, Inc., Unarco Material Handling, Inc., Inteva Products LLC, the Doe Run Resources Corporation and US Magnesium LLC), they were also part of the RG Steel Controlled Group.

23. Therefore, Defendants were all jointly and severally liable for any withdrawal liability triggered by RG Steel.

## RG STEEL'S WITHDRAWAL FROM THE SPT AND DEFENDANTS CONTROLLED GROUP LIABILITY

24. On May 31, 2012, RG Steel filed a Chapter 11 Bankruptcy Petition in the United States District Court for the District of Delaware (the "RG Steel Bankruptcy").

25. In or around August 2012, RG Steel permanently ceased its steelmaking operations when it terminated all of its remaining United Steelworkers employees.

26. Those August 2012 events effected a complete withdrawal from the SPT and triggered withdrawal liability for RG Steel under ERISA. 29 U.S.C. §1383.

27. So long as Renco owned at least 80% of RG Steel and each of the Defendants, all of the Defendants were members of the RG Steel Controlled Group such that they would each be liable for RG Steel's withdrawal liability. 29 U.S.C. §1301(b)(1).

28. However, in January 2012, in an attempt to evade or avoid that controlled group liability, Renco divested itself of just over 20% of its ownership of RG Steel less than five months before RG Steel filed for Bankruptcy (the "Cerberus Transaction").

29. Renco did not divest all of its interest in RG Steel; rather, it retained 75.5% ownership, and therefore the controlling interest, in RG Steel.

30. By doing so, Renco believed that it would be able to retain control over its subsidiary, RG Steel, yet avoid controlled group liability (including withdrawal liability to the SPT) that would be triggered when it placed RG Steel into bankruptcy a few months later and RG Steel ceased covered operations.

31. However, pursuant to ERISA, such a transaction can be disregarded and withdrawal liability can be collected from a former member of a contributing employer's controlled group where that entity removed itself from the controlled group in a transaction which had as a principal purpose an intent to evade or avoid controlled group liability. 29 U.S.C. §1392(c).

32. The SPT contends that the Cerberus Transaction had as a principal purpose an intent to evade or avoid controlled group liability, and therefore that transaction can be disregarded and withdrawal liability can be asserted against Defendants. The SPT has thus assessed Defendants for that withdrawal liability.

33. Similarly, the Pension Benefit Guarantee Corporation ("PBGC"), an independent agency of the United States government, filed a lawsuit in the United States District Court for the Southern District of New York in January 2013 asserting that the Cerberus Transaction had

a principal purpose of evading controlled group liability for RG Steel's single-employer pension plans and seeking to hold Defendants liable for the same. The PBGC further alleged that Renco only closed the Cerberus Transaction by committing fraud against the PBGC to prevent it from terminating RG Steel's single-employer pension plans and locking Renco into RG Steel's controlled group prior to the closing of the Cerberus Transaction.

34. After a bench trial, but before the Court's decision, Renco capitulated and entered into a settlement with the PBGC whereby Renco agreed to accept its full controlled group liability for the RG Steel single-employer pension plans.

35. Even though Renco assumed all of its controlled group liability for the RG Steel single-employer plans, Renco continues to deny its controlled group liability to the SPT.

**DEFENDANTS DISREGARD ERISA'S "PAY NOW - DISPUTE LATER RULE"**

36. After the RG Steel withdrawal from the SPT, Cheiron, the SPT's independent actuary, calculated RG Steel's withdrawal liability.

37. Cheiron initially calculated RG Steel's withdrawal liability to be $86,181,976.

38. Based on this $86,181,976 figure, Cheiron calculated the withdrawal liability payment plan to be 11 equal quarterly payments of $8,252,337, followed by a final payment of $1,002,611. (The initial "Cheiron Report" is attached as Exhibit 1).

39. ERISA provides that when a pension plan makes an assessment of withdrawal liability, it shall notify the contributing employer of both the amount of the liability and the schedule for liability payments. 29 U.S.C. §1399(b)(1).

40. ERISA requires that employers (and members of the employer's controlled group) who have been assessed with withdrawal liability make interim payments even while they dispute the assessment:

> Withdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor under subsection (b)(1) of this section beginning no later than 60 days after the date of the demand notwithstanding any request for review or appeal of determinations of the amount of such liability or the schedule.

29. U.S.C. §1399(c)(2).

41. This is known as the "Pay Now - Dispute Later Rule."

42. A withdrawn employer has the choice to pay its withdrawal liability via a lump sum payment or via "interim payments" under a payment plan determined pursuant to ERISA. 29 U.S.C. §1399(c).

43. On April 14, 2015, Counsel for the SPT sent counsel for Renco the full Cheiron Report, advising Defendants of the total withdrawal liability assessment and the interim payment amounts due to the SPT.  (The April 14, 2015 email is attached as Exhibit 2).

44. The SPT sought to hold Defendants liable for RG Steel's withdrawal liability due to the SPT's finding that a principal purpose of the Cerberus Transaction was to evade or avoid withdrawal liability, and therefore that transaction could be disregarded and the SPT could treat the Defendants as remaining in the RG Steel Controlled Group.

45. Thus, as of April 14, 2015, Defendants were aware of the withdrawal liability assessment against RG Steel, the total amount of that assessment, the schedule of interim payments as calculated by the actuary, and the fact that the SPT was seeking from Defendants the full amount of RG Steel's withdrawal liability.

46. Once Renco's counsel received notice of the interim payment amounts, and the payment schedule, Defendants were required under ERISA to begin making interim payments under that schedule.  29 U.S.C. §1399(c)(2).

47. On March 10, 2016, having received no interim payments, Counsel for the SPT sent counsel for Renco a 60 day cure letter pursuant to ERISA 4219(c)(5), 29 U.S.C. §1399(c)(5).  (The March 10, 2016 letter is attached as Exhibit 3).

48. Defendants failed to make any payments after receiving of the 60 day cure letter.

49. Defendants have disputed whether Renco remained in the RG Steel Controlled Group, arguing that because Renco shed over 20% of its equity in RG Steel through the Cerberus Transaction, it no longer owned at least 80% of RG Steel at the time of RG Steel's withdrawal, was no longer in the RG Steel Controlled Group, and so could not be held jointly and severally liable for RG Steel's withdrawal liability.

50. The SPT disagreed and determined that a principal purpose of the transaction whereby Renco reduced its ownership of RG Steel from 100% to 75.5% was to evade or avoid withdrawal liability such that the transaction can be disregarded and withdrawal liability would be owed from Defendants as members of the RG Steel Controlled Group.  29 U.S.C. §1392(c).

51. Defendants thereafter initiated arbitration pursuant to ERISA to determine their liability to the SPT.

52. The SPT initially resisted arbitration, believing that Defendants had waived arbitration by failing to timely file a request for review of the withdrawal liability assessment.  The SPT therefore filed an action in this Court to collect on the withdrawal liability.

53. This Honorable Court dismissed that action, finding that ERISA required the parties to arbitrate all disputes, including both the dispute over whether Defendants had waived arbitration and the dispute over whether a principal purpose of the Cerberus Transaction was to evade and avoid controlled group liability.

54. The Court thereafter ordered the parties to proceed to arbitration before Arbitrator Ira Jaffe.  (The Order is attached as Exhibit 4).

## COUNT I
## CONFIRMATION OF ARBITRATION ORDER

55. Paragraphs 1 through 54 of this Complaint are hereby incorporated by reference as though the same were set forth herein at length.

56. Because Defendants failed to make any of the required interim payments to the SPT, the SPT filed an Expedited Motion for Interim Payments requesting that the Arbitrator order Defendants to make the delinquent interim payments, and award the SPT interest, liquidated damages and attorneys' fees. (A copy of the Motion is attached as Exhibit 5).

57. Though the SPT could have gone directly to federal court to seek interim payments, it instead sought a ruling from the Arbitrator as it was clear that certain disputed issues between the parties required resolution by the Arbitrator before interim payments could be ordered.

58. Chief among those issues was the date that Defendants were given notice of the assessment of withdrawal liability and thus the date on which their interim payments obligation began.

59. The parties thereafter briefed the Arbitrator on all of the legal issues relating to Defendants' interim payments obligation. (Copies of the briefs filed on the Motion for Interim Payments are attached as Exhibits 6, 7 and 8).

60. On December 1, 2017, after considering all of the legal arguments, the Arbitrator issued an Interim Ruling on Motion for Interim Payments, along with an Interim Award that granted the SPT's Motion for Interim Payments. (The Interim Ruling is attached as Exhibit 9).

61. The Arbitrator resolved the dispute as to the date that Defendants were given notice of the withdrawal liability assessment under ERISA by determining that Defendants were notified of their obligation to make interim payments on April 14, 2015, the date counsel for the SPT provided the Cheiron report to counsel for Defendants. Thus, the Arbitrator found that

Defendants' first interim payment was due 60 days after April 14, 2015. Subsequent interim payments were then owed every three months until the payment plan was completed.

62. The SPT thereafter provided the Arbitrator with a revised withdrawal liability calculation from the SPT's actuary that reduced Defendants' withdrawal liability from $86,181,976 to $82,150,432. (The revised "Cheiron Report" is attached as Exhibit 10). The recalculation was the result of subsequent guidance from the PBGC as to the calculation of withdrawal liability. This recalculation would not affect the date that interim payments were owed, only the amount of those payments.

63. The Arbitrator then issued an Order which required Defendants to:

   **1. Pay the SPT delinquent interim payments in the amount of $85,992,445.00 owed from April 14, 2015 to December 14, 2017;**

   **2. Pay the SPT interest in the amount of $4,037,410.44 for that same time period, as the rate set forth in 29 C.F.R. § 4219.32(b); and**

   **3. Make a final interim payment to the SPT in the amount of $1,536,447.00 by March 14, 2018.**

(The December 14, 2017, Order is attached as Exhibit 11).

64. This Order was based on the revised withdrawal liability amount of $82,150,432.

65. The Arbitrator further ordered that interest would continue to accrue from the date of the Order at the interest rate set forth in 29 C.F.R. § 4219.32(b) until Defendants made full payment of the interim payments or there was a ruling that Defendants were not in RG Steel's controlled group and therefore not liable for RG Steel's withdrawal liability (that issue is currently being arbitrated).

66. The Arbitrator declined to award the SPT interest at the rate prescribed by 29 U.S.C. §1132(g)(2), but instead awarded interest at the rate set forth in 29 C.F.R. §4219.32(b), because he believed that his authority regarding interest was limited to the amount set forth in that regulation.

67. The Arbitrator also did not grant the SPT liquidated damages or attorneys' fees, finding that his authority under ERISA did not permit it. He indicated that the SPT would have to proceed in District Court to obtain the liquidated damages, attorneys' fees and the higher interest rate under 29 U.S.C. §1132(g)(2), specifically noting in his Order:

> **In any subsequent action to enforce this Order, this Order shall not preclude Respondent from seeking liquidated damages, an interest rate (if applicable) greater than the rate set forth in 29 C.F.R. §4219.32(b), and/or attorneys fees.**

68. Before filing this action, by letter dated December 15, 2017, counsel for the SPT requested that Defendants inform it by December 22, 2017 whether they intended to make the interim payments and interest totaling $90,029,855.44, that they were ordered to pay by the Arbitrator under the Pay Now-Dispute Later Rule. (The December 15, 2017, letter is attached as Exhibit 12).

69. To date, despite taking the issue of their liability for RG Steel's withdrawal to arbitration, and despite the Order of the Arbitrator that Defendants make interim withdrawal liability payments, <u>Defendants have not made any payments to the SPT</u> and have refused to indicate whether they will ever do so.

70. Defendants have no defense for refusing to make the required interim payments as ordered by the Arbitrator.

71. Defendants are essentially availing themselves of the "Dispute Later" part of the Pay Now - Dispute Later Rule, with the parties proceeding to arbitration. However, they are ignoring the "Pay Now" part of that Rule, which is mandatory under ERISA and requires payment of the interim payments during the pendency of any dispute over the liability.

72. Though the Arbitrator believed it beyond his authority to award liquidated damages, ERISA, 29 U.S.C. §1132(g)(2), permits the recovery of liquidated damages of up to 20% for interim payments that are not made. 29 U.S.C. §1132(g)(2)(C)(ii). However, the SPT's

Declaration of Trust provides for liquidated damages of 10% on each payment missed.  (The relevant provisions of the SPT's Declaration of Trust are attached as Exhibit 13).

73. Liquidated damages on the delinquent interim payments are therefore $8,599,244.50.

74. Defendants will owe an additional $153,644.70 in liquidated damages if they fail to pay all amounts due and owing by March 14, 2018, including a final interim payment of $1,536,447.00.

75. ERISA, 29 U.S.C. §1132(g)(2), also provides that a pension plan is entitled to interest on any delinquent amount at the rate set forth in the plan's trust documents.  29 U.S.C. §1132(g)(2)(B).

76. The SPT's Declaration of Trust provides for interest at 1.25% per month (or 15% annually).

77. This 15% interest rate, not the interest rate set forth in 29 C.F.R. §4219.32(b), must be awarded from the due date of the first payment through the present.

78. Interest on the missed interim payments is therefore $17,807,602.15 through January 31, 2018.  Interest will continue to accrue after January 31, 2018 at the rate of $35,830.19 per day.

79. If Defendants fail to make payment of amounts due and owing by March 14, 2018, including a final interim payment of $1,536,447.00, interest will continue to accrue after March 14, 2018 at a revised rate of $36,470.37 per day.

80. Under ERISA, an award of the SPT's attorneys' fees and costs, along with interest and liquidated damages, is mandatory because Defendants have failed to make the required interim payments.  *See Trustees of Amalgamated Ins. Fund v. Sheldon Hall Clothing, Inc.,* 862 F.2d 1020, 1023-24 (3d Cir.1988) ("award of these amounts . . . is mandatory for the

district court, not discretionary"); *Carriers Container Council, Inc. v. Mobile S.S. Assn-International Longshoreman's Assoc.,* 896 F.2d 1330, 1346 (11th Cir.1990) ("under the statute the district court *must* award the Plan the unpaid withdrawal payments, double interest on those contributions [or interest and liquidated damages if greater] and attorneys' fees") (emphasis added); *Banner Indus.*, *Inc. v. Cent. States, Se. & Sw. Areas Pension Fund,* 663 F. Supp. 1292, 1300 (N.D. Ill. 1987) ("[T]he language of the statute makes clear that once the court determines that [the fund] is entitled to interim payments, the court is required to award the plan liquidated damages as well as attorney's fees"); *Teamsters Pension Tr. Fund of Philadelphia & Vicinity v. Headley's Exp. & Storage Co.*, 1993 WL 189933, at *7 (E.D. Pa. June 3, 1993) ("Awards of reasonable attorneys' fees, interest, and liquidated damages under 29 U.S.C. §1132 are mandatory when a fund prevails in a suit to compel withdrawal liability interim payments").

81. Even if attorneys' fees were not mandatory, they should be awarded here as Renco has not only failed to make interim payments in violation of ERISA, but it has done so in contravention of the Order of the Arbitrator that this Court appointed to hear this case. (See Exhibit 4).

82. Renco's failure to make interim payments is even more improper in light of the fact that Renco has previously accepted its full controlled group liability for RG Steel's single employer pension plans.  Despite that, Renco not only continues to fight its controlled group liability to the SPT, but has failed to make the mandatory interim payments to the SPT.

83. Renco's failure to make interim payments can only be considered to be a litigation tactic, but such a litigation tactic comes with a price - liquidated damages, interest and attorneys' fees.  29 U.S.C. §§1451(b), 1132(g)(2).

84. Defendants should therefore be ordered to pay the outstanding interim withdrawal liability payments, interest, and liquidated damages, as well as the SPT's attorneys'

fees and costs incurred in seeking the interim payments, both at the arbitration level and in this Court.

WHEREFORE, Plaintiff, Steelworkers Pension Trust by Daniel A. Bosh, Chairman, demands judgment against Defendants in the amount of $112,399,291.65 as of January 31, 2018, as well as continuing interest at the rate of $35,830.19 per day.  Should Defendants fail to make the final interim payment of $1,536,447.00 by March 14, 2018, judgment is demanded against Defendants in the amount of $114,057,804.14, which would include the amounts due and owing with the filing of this Complaint, the final interim payment of $1,536,447.00, accumulated daily interest of $1,504,867.79, plus additional liquidated damages of $153,644.70 due for such final payment.  Moving forward after March 14, 2018, interest would continue to accrue on the entire amount owed at a revised rate of $36,470.37 per day.  The SPT also demands judgment against Defendants for the SPT's legal costs and the SPT's reasonable attorneys' fees.

## COUNT II
## INTERIM PAYMENTS PURSUANT TO 29. U.S.C. §1399(c)(2)

85.     Paragraphs 1 through 84 of this Complaint are hereby incorporated by reference as though set forth fully herein at length.

86.     Under the "Pay Now - Dispute Later Rule," Defendants must make interim payments pending the resolution of their withdrawal liability dispute with the SPT.

87.     As of April 14, 2015, Defendants were aware of the withdrawal liability assessment against RG Steel, the total amount of that assessment, the schedule of interim payments as calculated by the actuary, and the fact that the SPT was seeking from Defendants the full amount of RG Steel's withdrawal liability.

88.     Once Renco's counsel received notice of the interim payment amounts, and the payment schedule, Defendants were required under ERISA to begin making interim payments under that schedule.  29 U.S.C. § 1399(c)(2).

89.     Defendants have violated the "Pay Now - Dispute Later Rule" by failing to make the required interim payments.  29 U.S.C. §1399(c)(2).

90.     The SPT's actuary has since revised the withdrawal liability calculation, reducing Defendants' withdrawal liability from $86,181,976 to $82,150,432.  (See Exhibit 10).  The recalculation was the result of subsequent guidance from the PBGC as to the calculation of withdrawal liability.  This recalculation would not affect the date that interim payments were owed, only the amount of those payments.

91.     ERISA provides strict penalties for an entity that fails to make the required interim payments while it is disputing its withdrawal liability.

92.     ERISA provides that any failure of an employer to make the required interim withdrawal liability payments shall be treated as a delinquent contribution (within the meaning of 29 U.S.C. §1145).  29 U.S.C. §1451(b).

93.     Therefore, the SPT is entitled to the statutory remedies available to a fund under 29 U.S.C. §1132(g)(2) for delinquent contributions.  *See Tr. of Amalgamated Ins. Fund v. Sheldon Hall Clothing*, 683 F. Supp. 986, 992-93 (E.D. Pa. 1988), *aff'd*, 862 F. 2d 1020 (3d Cir. 1988) ("in an action [for the collection of overdue withdrawal liability payments], by virtue of §§1451(b) and 1145, [a court] must look to 29 U.S.C. §1132(g)(2) [for the damages calculation]").

94.     ERISA, 29 U.S.C. §1132(g)(2), permits the recovery of liquidated damages of up to 20% for interim payments that are not made.  29 U.S.C. §1132(g)(2)(C)(ii).  However, the

SPT's Declaration of Trust provides for liquidated damage of 10% on each payment missed. (See Exhibit 13).

95.     Liquidated damages on the delinquent interim payments are therefore $8,599,244.50.

96.     Defendants will owe an additional $153,644.70 in liquidated damages if they fail to pay all amounts due and owing by March 14, 2018, including a final interim payment of $1,536,447.00.

97.     ERISA, 29 U.S.C. §1132(g)(2), also provides that a pension plan is entitled to interest on any delinquent amount at the rate set forth in the plan's trust documents.  29 U.S.C. §1132(g)(2)(B).

98.     The SPT's Declaration of Trust provides for interest at 1.25% per month (or 15% annually).

99.     This 15% interest rate must be awarded from the due date of the first payment through the present.

100.    Interest on the missed interim payments is therefore $17,807,602.15 through January 31, 2018.  Interest will continue to accrue after January 31, 2018 at the rate of $35,830.19 per day.

101.    If Defendants fail to make payment of amounts due and owing by March 14, 2018, including a final interim payment of $1,536,447.00, interest will continue to accrue after March 14, 2018 at a revised rate of $36,470.37 per day.

102.    Under ERISA, an award of the SPT's attorneys' fees and costs, along with interest and liquidated damages, is mandatory because Defendants have failed to make the required interim payments.  *See Trustees of Amalgamated Ins. Fund v. Sheldon Hall Clothing, Inc.,* 862 F.2d 1020, 1023-24 (3d Cir.1988) ("award of these amounts . . . is mandatory for the

district court, not discretionary"); *Carriers Container Council, Inc. v. Mobile S.S. Assn-International Longshoreman's Assoc.,* 896 F.2d 1330, 1346 (11th Cir.1990) ("under the statute the district court *must* award the Plan the unpaid withdrawal payments, double interest on those contributions [or interest and liquidated damages if greater] and attorneys' fees") (emphasis added); *Banner Indus.*, *Inc. v. Cent. States, Se. & Sw. Areas Pension Fund,* 663 F. Supp. 1292, 1300 (N.D. Ill. 1987) ("[T]he language of the statute makes clear that once the court determines that [the fund] is entitled to interim payments, the court is required to award the plan liquidated damages as well as attorney's fees"); *Teamsters Pension Tr. Fund of Philadelphia & Vicinity v. Headley's Exp. & Storage Co.*, 1993 WL 189933, at *7 (E.D. Pa. June 3, 1993) ("Awards of reasonable attorneys' fees, interest, and liquidated damages under 29 U.S.C. §1132 are mandatory when a fund prevails in a suit to compel withdrawal liability interim payments").

103.    Defendants should therefore be ordered to pay the outstanding interim withdrawal liability payments, interest, and liquidated damages, as well as the SPT's attorneys' fees and costs incurred in seeking the interim payments, both at the arbitration level and in this Court.

WHEREFORE, Plaintiff, Steelworkers Pension Trust by Daniel A. Bosh, Chairman, demands judgment against Defendants in the amount of $112,399,291.65 as of January 31, 2018, as well as continuing interest at the rate of $35,830.19 per day.  Should Defendants fail to make the final interim payment of $1,536,447.00 by March 14, 2018, judgment is demanded against Defendants in the amount of $114,057,804.14, which would include the amounts due and owing with the filing of this Complaint, the final interim payment of $1,536,447.00, accumulated daily interest of $1,504,867.79, plus additional liquidated damages of $153,644.70 due for such final payment.  Moving forward after March 14, 2018, interest would continue to accrue on the entire amount owed at a revised rate of $36,470.37 per day.  The SPT also

demands judgment against Defendants for the SPT's legal costs and the SPT's reasonable attorneys' fees.

                                                  Respectfully submitted,

                                                  TUCKER ARENSBERG, P.C.

                                                  */s/ Neil J. Gregorio*
Neil J. Gregorio, Esquire
Pa. Id. No. 90895
Bradley S. Tupi, Esquire
Pa. Id. No. 28682
Scott R. Leah, Esquire
Pa. Id. No. 57564
Richard B. Tucker, III, Esquire
Pa. Id. No. 24961
William P. Lewis, Esquire
Pa. Id. No. 316527

1500 One PPG Place
Pittsburgh, PA  15222
(412) 566-12212

Counsel for the Steelworkers Pension Trust by Daniel A. Bosh, Chairman

LIT:613981-15 029107-182024