**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| STEELWORKERS PENSION TRUST, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 18-142 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | Magistrate Judge Patricia L. Dodge |
| THE RENCO GROUP, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

### I. MEMORANDUM

Plaintiff Steelworkers Pension Trust, by its Chairman, Daniel A. Bosh ("SPT")

has commenced this action under the Employee Retirement Security Act of 1974, 29 U.S.C.

§§ 1001-1500 (ERISA), as amended by the Multiemployer Pension Plan Amendments Act of

1980 (MPPAA), against Defendants The Renco Group, Inc., and its subsidiaries, Ilshar Capital,

LLC, Blue Turtles, Inc., Unarco Material Handling Inc., Inteva Products, LLC, the Doe Run

Resources Corp. and US Magnesium LLC (collectively referred to as "Renco").

Pending before the Court is Plaintiff's Motion for Summary Judgment (ECF No. 73).

The Motion has been fully briefed, and oral argument was held on July 31, 2019.[1] For the

reasons that follow, SPT's Motion will be granted with respect to its request for interest,

attorney's fees and costs; but denied with respect to SPT's request that interest be computed at a

---

[1] The Court has reviewed the transcript of the oral argument, which was held before Magistrate
Judge Dodge; as well as the Power Point materials that were displayed during oral argument.

rate of 1.25% per month.[2]

## BACKGROUND

### A. Renco/SPT Dispute

At one time, Renco was a member of the controlled group that owned RG Steel.

RG Steel was a party to collective bargaining agreements that provided for contributions to be

made to SPT, a multiemployer pension plan, on behalf of bargaining unit employees at two steel

mills owned by RG Steel. On January 17, 2012, Renco entered into a financing transaction with

Cerberus Capital Management, Inc. ("Cerberus") that resulted in a significant capital infusion to

RG Steel, which was experiencing substantial financial losses. As part of this transaction,

there was an immediate transfer to Cerberus of 24.5% of the membership units of RG Steel.

According to Renco, this resulted in Renco no longer being part of the same controlled group for

purposes of ERISA.

Several months later, RG Steel filed for bankruptcy and ceased operations. SPT assessed

Renco with withdrawal liability, taking the position that the Cerberus transaction was designed

by Renco to evade and avoid liability. Renco disclaimed withdrawal liability because of its

contention that, following the Cerberus transaction, it was no longer part of the RG Steel

controlled group.

On April 14, 2015, counsel for SPT sent an email to counsel for Renco, stating:

Per your request, attached please find the calculations and payment plan data for
RG Steel's complete withdrawal from the Steelworkers Pension Trust in 2012.

---

[2] In a separate Memorandum and Order, in Civil Action 18-1311, the Court has denied Renco's
motion for partial summary judgment, which sought to vacate the Arbitrator's Award;
and granted SPT's motion for summary judgment, thereby confirming the Award.

As you know, our position is that the Renco Group was still part of the controlled group when the complete withdrawal was triggered since the January 2012 Cerberus Transaction was designed to evade and avoid withdrawal liability.

Consequently, in light of the various Notices of Appearances filed by attorneys for the Renco Group in the RG Steel bankruptcy prior to the SPT's filing of its Proof of Claim, the Renco controlled group had notice of the withdrawal liability assessment such that it missed the opportunities to file a Request for Review and to trigger the MPPAA arbitration to dispute the attached calculations.

Nonetheless, per our discussion, I am willing to discuss the calculations with you.

(Pl.'s Concise Statement of Material Facts ("SOF") ¶¶ 1-2.)[3]

The email sent to Renco by SPT's counsel attached a September 27, 2013 Report from SPT's actuary, Cheiron ("Initial Cheiron Report"), which calculated withdrawal liability in the amount of $86,181,976.00, to be paid in eleven (11) quarterly payments of $8,252,337.00 each, plus a final quarterly payment of $1,002,611.00. (SOF ¶¶ 3-4.) The Initial Cheiron Report purported to assess withdrawal liability for the RG Steel controlled group, not Renco directly.

Renco did not make a quarterly payment of $8,252,337.00 to SPT within 60 days of receiving the April 14, 2015 email and Initial Cheiron Report, *i.e.*, by June 14, 2015. In addition, Renco did not make any of the ten remaining quarterly payments that were due between September 14, 2015 and September 14, 2017 under the schedule set forth in the Initial Cheiron Report. (SOF ¶¶ 5-6.)

**B. The First SPT Lawsuit and Subsequent Arbitration**

On February 22, 2016, SPT filed an action against Renco in this Court, at Civil Action No. 16-190, alleging that Renco was responsible for $86,181,976.00 in withdrawal liability incurred by RG Steel to SPT. SPT asserted that Renco exited RG Steel's controlled group

---

[3] ECF No. 74.

through a transaction having a principal purpose of evading or avoiding withdrawal liability, and, therefore, the transaction must be disregarded pursuant to 29 U.S.C. § 1392(c). Renco filed a motion to dismiss, arguing, *inter alia*, that SPT's substantive claims had to be arbitrated in the first instance. On August 22, 2016, a Report and Recommendation ("R&R") was issued recommending that Renco's motion be granted and that the parties be directed to arbitrate SPT's claims. On September 21, 2016, the Court adopted the R&R (Civ. A. No. 16-190, ECF No. 55) and its decision was affirmed by the Court of Appeals for the Third Circuit on May 31, 2017. (Civ. A. No. 16-190, ECF No. 73.)

In June 2017, the Court appointed Ira F. Jaffe ("the Arbitrator") to serve as the arbitrator in the parties' arbitration proceeding. (Civ. A. No. 16-190, ECF No. 72.) On July 17, 2017, SPT filed an expedited motion for interim payments with the Arbitrator. By Interim Ruling and Award on Interim Payments dated December 1, 2017 ("Interim Ruling and Award"), the Arbitrator granted in part SPT's expedited request. The Arbitrator found that Renco's first quarterly withdrawal liability payment under the Initial Cheiron Report of $8,252,337.00 was due sixty days after April 14, 2015, *i.e.*, on June 14, 2015, and that subsequent quarterly payments of $8,252,337.00 each were due every three months thereafter until the payment plan was completed. (SOF ¶¶ 7-9.)

In its expedited motion, SPT requested liquidated damages at a flat rate of 10% per each allegedly-owing interim payment on the ground that "the SPT's Declaration of Trust provides for liquidated damage[s] of 10% on each payment missed." (Compl. Ex. 5 at 5.)[4] SPT also contended that interest on each unpaid interim payment would continue to accrue, but made no such contention with respect to liquidated damages. (*Id.*) In the Interim Ruling and Award,

---

[4] ECF No. 1.

while holding that the interest rate set forth in 29 C.F.R. § 4219.32(b)[5] applied to the allegedly overdue withdrawal liability, the Arbitrator stated that his ruling was "subject to potential revision in a subsequent ruling if it is proven that there is a higher rate that should have been applied pursuant to 29 C.F.R. § 4219.33."[6] (Compl. Ex. 9 at 4.)

The Arbitrator denied SPT's request for additional amounts under 29 U.S.C. § 1132(g)(2) (liquidated damages at the rate set forth in SPT's Declaration of Trust and attorney's fees), finding that he lacked jurisdiction to award this element of damages. He stated that "[t]he claim for interest, however, is one that is contemplated by [Section 4219(c)(3)],[7]" which provides in part that: "If a payment is not made when due, interest on the payment shall accrue from the due date until the date on which payment is made." In doing so, he cited regulations governing overdue, defaulted and overpaid withdrawal liability that are set forth 29 C.F.R. §§ 4219.32 and

---

[5] Section 4219.32(b) states that, except as otherwise provided in rules adopted by the plan, "interest under this section shall be charged or credited for each calendar quarter at an annual rate equal to the average quoted prime rate on short-term commercial loans for the fifteenth day . . . of the month preceding the beginning of each calendar quarter, as reported by the Board of Governors of the Federal Reserve System in Statistical Release H.15." *Id.*

[6] In relevant part, Section 4219.33 states:

> Plans may adopt rules relating to overdue and defaulted withdrawal liability, provided that those rules are consistent with ERISA. These rules may include, but are not limited to, rules for determining the rate of interest to be charged on overdue, defaulted and overpaid withdrawal liability (provided that the rate reflects prevailing market rates for comparable obligations) . . . Plan rules adopted under this section shall be reasonable.

*Id.*

[7] The Interim Ruling and Award actually referred to "Section 4219(b)(3)" (Compl. Ex. 9 at 8), but such a provision does not exist. The quoted language in the award confirms that the Arbitrator meant to cite Section 4219(c)(3).

4219.33.  (SOF ¶ 10.)[8]

As of December 1, 2017, when the Arbitrator issued the Interim Ruling and Award, only two quarterly payments under the Initial Cheiron Report remained:  the 11th quarterly payment of $8,252,337.00, due on December 14, 2017, and the final quarterly payment of $1,002,611.00, due on March 14, 2018.  Following the Arbitrator's issuance of the Interim Ruling and Award, SPT provided the Arbitrator with a revised withdrawal liability calculation from Cheiron ("Revised Cheiron Report"), which reduced the total amount of withdrawal liability from $86,181,976.00 to $82,150,432.00.  The Revised Cheiron Report adjusted the amount of the quarterly payments, such that the first eleven quarterly payments were reduced from $8,252,337.00 to $7,817,459.00, and the final quarterly payment was increased from $1,002,611.00 to $1,536,447.00.  Although the amount of the quarterly payments changed, the dates they became due remained the same, based on the April 14, 2015 trigger date, as confirmed by the Arbitrator's subsequent Order dated December 14, 2017.  Therefore, in accordance with the Revised Cheiron Report, Renco was required to make the 11th quarterly payment of $7,817,459.00, by December 14, 2017, and the final quarterly payment of $1,536,447.00, by March 31, 2018.  Renco did not make the 11th quarterly payment of $7,817,459.00 by December 14, 2017.  (SOF ¶¶ 11-16.)

The Arbitrator issued another Order, on December 14, 2017, directing Renco, based on the Revised Cheiron Report, to pay SPT "$85,922,445 in delinquent interim withdrawal liability payments, representing the [eleven] quarterly payments [of $7,817,459 each] that should have been made from April 14, 2015 to the present."  The Arbitrator ordered Renco to pay SPT

---

[8]  In its Concise Statement, SPT mistakenly asserted that the Arbitrator declined to award interest at the rate under its Declaration of Trust because he lacked jurisdiction; but in its reply brief, SPT acknowledges the error.  (ECF No. 82 at 3 n.3.)

"$4,037,410.44 in interest on the delinquent interim payments, representing interest on the above interim payments from April 14, 2015 through December 14, 2017, at the interest rate set forth in 29 C.F.R. § 4219.32(b)." The Arbitrator also directed Renco to make the final quarterly payment of $1,536,447.00 to SPT by March 14, 2018.[9] The Arbitrator's Order provided that interest on the unpaid amounts would continue to accrue at the interest rate set forth in 29 C.F.R. § 4219.32(b), until Renco made full payment to SPT or until there was a ruling that Renco was not liable for RG Steel's withdrawal liability. (SOF ¶¶ 17-20.)

The Arbitrator's December 14, 2017 Order provided that SPT would not be precluded "from seeking liquidated damages, an interest rate (if applicable) greater than the interest rate set forth in 29 C.F.R. § 4219.32(b), and/or attorneys' fees" in any subsequent lawsuit to enforce the Order.

### C.  <u>The Present Lawsuit</u>

SPT commenced this action in January of 2018 to enforce the Arbitrator's Interim Payments Order and to compel Renco to make the mandatory withdrawal liability payments. In the Complaint, SPT alleges that Renco owed interim withdrawal liability payments in the amount of $114,057,804.14, as a result of Renco's failure to make withdrawal liability payments pending the resolution of their disputes of such liability as required by ERISA. Count I of SPT's Complaint seeks a confirmation of the Interim Ruling and Award and Interim Order made by the Arbitrator on December 1, 2017 and December 14, 2017, respectively. Count II seeks interim payments totaling $114,057,804.14, pursuant to 29 U.S.C. § 1399(c)(2),[10] plus interest,

---

[9]  Renco did not make this final payment of $1,536,447.00 by March 14, 2018. (SOF ¶¶ 21-22.)

[10]  "Withdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor under subsection (b)(1) beginning no later than 60 days after the date of the demand

liquidated damages, legal costs and attorney's fees.

In this proceeding, the parties have stipulated to the amount of principal interim withdrawal liability and are only contesting the interest rate to be applied to SPT's additional statutory damages under 29 U.S.C. § 1132(g)(2).

Consistent with the expedited motion that it filed in the arbitration proceeding, SPT seeks a ruling compelling Renco to pay liquidated damages pursuant to 29 U.S.C. § 1132(g)(2)(C)(ii) at a flat rate of 10% per each allegedly-owing interim payment. (Compl. ¶¶ 72-74.) SPT also alleged that interest would continue to accrue on each unpaid interim payment, but did not take this position with respect to liquidated damages. (*Id.* ¶¶ 78-79.)

### D. The Arbitrator's Awards Regarding SPT's Withdrawal Liability Claim

On July 18, 2018, the Arbitrator issued a 76-page Interim Ruling and Award on the merits of SPT's withdrawal liability claim against Renco. The Arbitrator ruled in favor of SPT, finding that, under 29 U.S.C. § 1392(c), a principal purpose of the Cerberus Transaction was to evade or avoid withdrawal liability; and, therefore, that Renco effectively was a member of the RG Steel controlled group on the date of RG Steel's withdrawal from SPT. According to the Arbitrator's Interim Ruling and Award on Liability, Renco is liable to SPT for the full amount of the withdrawal liability attributable to RG Steel. (SOF ¶¶ 26-28.)

In September 2018, following Renco's challenge to SPT's calculation of withdrawal liability, the parties stipulated that the amount of withdrawal liability should be reduced to the amount set forth in a September 13, 2018 Report from Cheiron ("Final Cheiron Report"). According to the Final Cheiron Report, the total amount of withdrawal liability was

---

notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule." *Id.*

$74,444,086.00, if paid in a lump sum; or $78,664,224.00, if amortized over ten quarterly payments of $7,817,459.00, plus a final quarterly payment of $489,634.00. The Final Cheiron Report eliminated one of the $7,817,459.00 quarterly payments from the schedule in the Revised Cheiron Report and reduced the final quarterly payment. (SOF ¶¶ 29-31.)

The Arbitrator issued his Final Award on September 25, 2018, in favor of SPT and against Renco. The Arbitrator found that a principal purpose of the Cerberus Transaction was to evade or avoid withdrawal liability; and, therefore, Renco was liable for the withdrawal liability of RG Steel. The Final Award incorporated the Arbitrator's December 1, 2017 Interim Ruling and Award, the December 14, 2017 Interim Order and the July 18, 2018 Interim Opinion and Award.

The Final Award in favor of SPT was for the amount set forth in the "interim payment schedule" referenced in the Final Cheiron Report. All of the payment deadlines under the Final Cheiron Report already had lapsed by the time of the Arbitrator's Final Award. The Arbitrator adopted interest calculations Cheiron made "using the interest rates contained in [the] December 1, 2017 Interim Ruling and December 14, 2017 Order regarding Interim Payments and the date for the commencement of payments set forth in that same Interim Ruling and Order." According to the Final Award, however, Cheiron's interest calculations, marked as Attachment C to the Final Award, are correct only if this Court finds that: (1) the varying interest rate under 29 C.F.R. § 4219.32(b) applies, and (2) Renco was required to begin making the quarterly payments no later than 60 days after April 14, 2015. (SOF ¶¶ 32-35.)

Like the Interim Ruling and Award, the Final Award expressly carved out "SPT's reservation of rights to seek to recover additional interest (including seeking that the court use a greater rate of interest pursuant to 29 C.F.R. §4219.33), liquidated damages, attorneys' fees and costs in a separate civil action to enforce the December 1, 2017 Interim Ruling and December 14, 2017 Order."

### E. The Renco Lawsuit

Renco commenced an action in this Court on October 1, 2018 to vacate the Arbitrator's Final Award. *The Renco Group, Inc. v. The Steelworkers Pension Trust*, 2:18-cv-1311, ECF No. 1. (SOF ¶¶ 36-38.) In SPT's counterclaim to that action, as well as its Complaint in Civil Action at No. 18-1429 to confirm the Final Award (these cases were subsequently consolidated), SPT sought a ruling compelling Renco to pay $9,231,215.40 in liquidated damages "calculated at 10% of each missed Interim Payment" pursuant to the Trust Document. (Civ. A. No. 18-1311, ECF No. 22 ¶¶ 31-32, 37; Civ. A. No. 18-1429, ECF No. 1 ¶¶ 57-58, 63.)

On January 3, 2019, Renco submitted a withdrawal liability payment to SPT in the amount of $50,000,000. By Consent Order dated January 9, 2019, the parties stipulated that: the principal amount of Renco's withdrawal liability is $78,664,224.00; and that payment of the full balance of the principal withdrawal liability, in the amount of $28,664,224.00, would be made on or before May 10, 2019.[11] The Consent Order also provided that SPT "reserved the right to move for an order in this action compelling [Renco] to pay interest, liquidated damages, and attorneys' fees." (ECF No. 64) Renco expressly reserved the right to contest its withdrawal liability and/or the amount of the withdrawal liability. (*Id.*)

---

[11] The record does not reflect whether this payment was made.

# DISCUSSION

## A.  Damages Recoverable Under ERISA

Pursuant to ERISA, when a contributing employer to a multiemployer pension plan withdraws from the plan, the plan may seek to recover from the employer the amount of any unfunded vested benefits attributable to the employees of the withdrawn employer.  29 U.S.C. § 1381(a).  An employer that properly has been notified of a plan's withdrawal liability assessment will be required to make payments pursuant to the plan's payment schedule ("interim payments"), irrespective of whether the employer challenges the assessment through a request for review or arbitration.  *See* 29 U.S.C. § 1399(c)(2).  If an employer has an obligation, but fails to make timely withdrawal liability payments (including interim payments), it may become liable not only for the principal amount of such payments, but also interest, which accrues from the due-date of each payment until the date on which payment is made.  29 U.S.C. § 1399(c)(3).  Interest on unpaid withdrawal liability payments "shall be charged at rates based on prevailing market rates for comparable obligations, in accordance with regulations prescribed by the corporation."  29 U.S.C. § 1399(c)(6).  The "corporation" is the Pension Benefit Guarantee Corporation, or PBGC.  29 U.S.C. § 1301(a)(4).

The PBGC regulations referenced in Section 1399(c)(6) state that "[p]lans may adopt rules relating to overdue and defaulted withdrawal liability, provided that those rules are consistent with ERISA.  These rules may include, but are not limited to, rules for determining the rate of interest to be charged on overdue, defaulted and overpaid withdrawal liability (provided that the rate reflects prevailing market rates for comparable obligations) . . . .  Plan rules adopted under this section shall be reasonable."  29 C.F.R. § 4219.33.  ERISA regulations further provide that, when a pension plan has not adopted an interest rate to be charged on overdue withdrawal

liability, "interest . . . shall be charged or credited for each calendar quarter at an annual rate equal to the average quoted prime rate on short-term commercial loans for the fifteenth day . . . of the month preceding the beginning of each calendar quarter, as reported by the Board of Governors of the Federal Reserve System." 29 C.F.R. § 4219.32(b).

ERISA permits a pension plan to bring a claim to recover overdue withdrawal liability payments, including interim payments. *See* 29 U.S.C. § 1451(a). The statute provides that an action for withdrawal liability "shall be treated in the same manner as a delinquent contribution (within the meaning of section 1145 of this title)," § 1451(b). *See also* 29 U.S.C. § 1401(d).

The ERISA section on delinquent contributions provides that:

In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan −

(A) the unpaid contributions,
(B) interest on the unpaid contributions,
(C) an amount equal to the greater of −
      (i) interest on the unpaid contributions, or
      (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
(E) such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.[12]

29 U.S.C. § 1132(g)(2).

---

[12] The "underpayment rate" in Section 6621 consists of the sum of the Federal short-term rate as determined by the Secretary of the Treasury for the first month in each calendar quarter plus 3 percentage points. *Id.*, § 6621(a)(2).

SPT's Declaration of Trust is silent regarding the interest rate to be applied to withdrawal liability.  However, it does address delinquent contributions in Section 12.07:

> (a) A Participating Employer that becomes delinquent in the payment to the Trust of the contributions it is required to pay shall, notwithstanding any limitations in Section 12.06 or otherwise in this Declaration of Trust, owe and pay to the Trust:
>
>> (1) interest on such delinquent contributions equal to the greater of (1) 1.25% per month or portion thereof, or (2) the consensus prime rate as reported in the Wall Street Journal on the first day of the calendar year in which the delinquency occurs plus two (2%) percent, said rate to be compounded annually . . . .
>>
>> (2) liquidated damages in an amount equal to the greater of the interest calculated under item (1) above or 10% of the amount of delinquent contributions due and owing; and
>>
>> (3) attorneys' fees, if incurred, equal to the greater of (1) 10% of the total amount due to the Trust but not less than $1,000; or (2) such amount as may be shown by affidavit submitted by the Trust's counsel, plus all other costs and expenses related to the collection of all amounts due to the Trust.

(SOF ¶ 50.)

## B.  The Parties' Positions Regarding Applicable Interest Rate

SPT argues that, when a pension fund prevails in an action under 29 U.S.C. § 1451 to compel an employer to make interim withdrawal liability payments, the fund is also entitled to recover the amounts listed in 29 U.S.C. § 1132(g)(2), namely interest, the greater of a double interest penalty or liquidated damages, and attorney's fees and costs.  SPT contends that the Court should apply the rate of interest set in its Declaration of Trust, *i.e.*, 1.25% per month, or 15% annually.  SPT also asserts that, as of January 31, 2019, it has incurred attorney's fees of $232,448.50.[13]

---

[13]  SPT supplemented its request for attorney's fees to include $59,622.00 incurred between January 31, 2019 and April 14, 2019.  (Supp. Gregorio Decl. ¶ 9.) ECF No. 75, Ex. B.  In a

Although Renco disputes its liability to SPT, it is not challenging for purposes of this proceeding that, if the Arbitrator's Award is upheld, SPT is entitled to attorney's fees, costs and a double interest penalty.  (ECF No. 80 at 1.)  However, Renco opposes SPT's attempt to recover interest at a 15% annual rate.  Renco contends that the rate advanced by SPT is punitive, and that the applicable interest rate is the prime rate prescribed in 29 C.F.R. § 4219.32(b).

In its Motion, SPT calculated that the total amount of interest owing, using a rate of 1.25% per month, is $30,108,727 (Benjaminson Aff. ¶ 11.)[14]; and that said amount is subject to doubling pursuant to Section 1132(g)(2).

Renco, on the other hand, has calculated interest based on the rate in 29 C.F.R. § 4219.32(b), using the methodology set forth in 29 C.F.R. § 4219.32(c).  Under this approach, Renco contends that the amount of interest owing is $8,521,300.00 (Dexter Decl. ¶ 12.)[15], which likewise would be subject to doubling.

In support of its position, SPT relies on certain provisions of ERISA.  ERISA specifically provides that an action to recover overdue withdrawal liability "shall be treated in the same manner as a delinquent contribution."  29 U.S.C. § 1451(b).  Further, as set forth in the final clause in 29 U.S.C. § 1132(g)(2), "interest on unpaid contributions shall be determined by using the rate provided under the plan."

SPT notes that Section 12.07(a)(1) of its Declaration of Trust sets the interest rate for delinquent contributions at 1.25% per month.  (ECF No. 1-13.)  Although its Declaration of

---

further supplement filed on August 14, 2019, SPT seeks an additional $24,970.50 in attorney's fees incurred between April 15, 2019 and August 8, 2019.  (ECF No. 88.)

[14]  ECF No. 75 Ex. A.

[15]  ECF No. 80 Ex. A.

Trust does not include any interest rate applicable for withdrawal liability, SPT contends that, just as ERISA provides that actions for withdrawal liability shall be treated in the same manner as those for delinquent contributions, the Court should cross-reference and use the Declaration of Trust's interest rate for delinquent contributions to calculate interest for unpaid withdrawal liability.

Renco counters that: the interest rate SPT utilizes does not apply to this situation, as the Arbitrator concluded; SPT could have inserted an applicable rate into the trust documents, 29 C.F.R. § 4219.33, but failed to do so; in its Complaint, SPT acknowledged that its claim for interest was based on Section 1399(c)(2);[16] and even if SPT's suggested approach was applied, the rate must be "reasonable," and SPT does not even suggest that it is. Rather, as the Arbitrator specifically found, SPT presented no "evidence that the particular interest rate referenced in Section 12.07 of the Declaration of Trust met the requirements [in] 29 C.F.R. § 4219.33 of being 'reflective of prevailing market rate for comparable obligations' and of being 'reasonable.'" (Compl. Ex. 9 at 9-10.) Renco also contends that, although Section 1132(g) sets forth the "categories of damages" available in an action to collect overdue withdrawal liability, PBGC regulations determine the "proper amount of damages under each category." *Board of Trustees of the Carpenter Trust Fund for N. Calif. v. JKJ, Inc.*, 2010 WL 373819, at *6-9 (N.D. Cal. Jan. 29, 2010).

In turn, SPT argues that the Arbitrator's ruling was a preliminary determination, and that he expressly "deferred . . . ruling" on whether SPT was entitled to a higher rate, an issue that

---

[16] This is not accurate. Although SPT mentioned § 1399(c)(2), it also cited § 1132(g)(2)(B) for the proposition that a pension plan is entitled to interest at the rate set in the plan documents; and then cited the Declaration of Trust section providing an interest rate of 1.25%. (Compl. ¶¶ 97-98.)

could be revisited "at a later point in the case, if needed." (Compl. Ex. 9 at 9-10.) According to

SPT, the Arbitrator preserved SPT's right to pursue a higher interest-rate on two occasions:

on December 14, 2017, in a follow-up order directing Renco to pay SPT approximately $90

million in principal and interest (at the PBGC default rate) (SOF ¶¶ 20-21); and in the Final

Award issued on September 25, 2018 (SOF ¶ 36). Because the Arbitrator never resolved this

issue, SPT contends, it can and should be resolved in this proceeding and should be governed by

§ 1132(g)(2). SPT also contends that there is no requirement that an award of interest under

§ 1132(g)(2) be "reasonable." *Moriarty ex rel. Local Union No. 727 v. Svec*, 429 F.3d 710, 721

(7th Cir. 2005). Finally, SPT notes that, even if it could be argued that its proposed rate is

punitive, this is a direct result of Renco's longstanding refusal to pay interim withdrawal

liability.

### C.  Analysis

The sole issue presented is: what interest-rate should be applied to Renco's overdue

withdrawal liability? It is undisputed that the Trust document does not include an interest rate

that is expressly-applicable. SPT argues that the delinquent-contribution rate of 1.25% per

month in the Trust document should be used. On the other hand, Renco proposes that the

appropriate interest rate is the prime rate, as set forth in PBGC regulations at 29 C.F.R.

§ 4219.32(b).

The Court is not persuaded by SPT's analyses, and declines to adopt them. ERISA

provides that, in any action to compel an employer to pay withdrawal liability, the employer's

failure to make payments shall be treated in the same manner as a delinquent contribution.

29 U.S.C § 1145(b). ERISA also provides that, in an action to recover delinquent contributions,

a plan may recover certain specified categories of damages, *i.e.*, interest, attorney's fees and

costs and liquidated damages in certain specified amounts.  Under this section, interest is calculated "using the rate provided under the plan or, if none, the rate prescribed under section 6621 of title 26."  29 U.S.C. § 1132(g)(2).  This does not logically lead to a conclusion that, in the absence of any provision regarding interest for withdrawal liability, the interest rate in SPT's plan applicable to delinquent contributions can or should be used for withdrawal liability.  Simply put, that contention is contrary to the very ERISA provision on which SPT relies.

SPT's reliance on *Trustees of the Amalgamated Insurance Fund v. Sheldon Hall Clothing, Inc.*, 862 F.2d 1020 (3d Cir. 1988) is similarly-misplaced.  In *Sheldon Hall,* pension plan trustees commenced an action to enforce an arbitrator's award of withdrawal liability.  Although the primary issue in the case was whether the lawsuit was timely filed, the employer also challenged the district court's assessment of a 20% interest rate.  The Court of Appeals for the Third Circuit stated:

> Section 1132(g)(2)(C) goes on to provide that the court shall apply an interest rate prescribed by the terms of the pension plan itself, which, in this case, is ten percent.  Under subparagraph (C), the court should then award an additional amount equal to the lesser of the interest on the unpaid amounts or liquidated damages provided for under the plan.  Here, adding an amount equal to the original ten percent interest − leading to an effective interest rate of twenty percent per annum − was correct.  Moreover, we note that award of these amounts plus reasonable attorney's fees is mandatory for the district court, not discretionary.

*Id.* at 1023-24 (citations omitted).

Significantly, the Court of Appeal's opinion did not address the interest rate urged by the employer, or whether the plan specifically addressed interest rates for withdrawal liability.  In the district court, the employer had argued that − because neither § 1401(b) nor § 1451 provided for the recovery of interest − the plaintiff possessed no right to recover such.  But the court cited the language in § 1451(b) that actions to compel the payment of withdrawal liability "shall be treated

in the same manner as a delinquent contribution (within the meaning of section 1145 of this title)." Thus, "we must look to 29 U.S.C. § 1132(g)(2)." *Sheldon Hall*, 683 F. Supp. 986, 993 (E.D. Pa. 1988). The district court held:

> Section 1132(g)(2) . . . provides that the rate of interest to be applied is that prescribed by the plan, or, if none, the rate prescribed by 26 U.S.C. § 6621. Here, [the assistant VP of the fund administrator] testified that the rate of interest provided for by the Plan is 10%. Thus, the plaintiff's calculation of "double interest" at the rate of 20% per annum was completely correct.

*Id.* The employer did not challenge the amount of the interest-rate, or the testimony that the amount cited in the plan was applicable. Rather, it contended that the fund was not entitled to any interest at all.

Thus, although the court in *Sheldon Hall* approved of the 10% interest rate, it did not address the specific issue presented in this case; namely, whether a plan's delinquent contribution rate can be applied as the interest-rate for withdrawal liability, when the latter is not specified in the plan. *See Einhorn v. Dubin Bros. Lumber Co.*, 33 F. Supp. 3d 504, 517 (D.N.J. 2014) (following *Sheldon Hall* for its cross reference to § 1132(g)(2), but applying the interest rate from 29 C.F.R. § 4219.32).[17] Indeed, if the *Sheldon Hall* case actually had resolved this issue as SPT contends, district courts within this Circuit would not still be grappling with the issue thirty years later.[18]

---

[17] SPT contends that the district court must have been applying a plan rate for delinquent contributions because the court cited three cases involving delinquent contributions (not withdrawal liability). *Id.* at 993 (citing *New York State Teamsters Council Health & Hosp. Fund v. City of Utica*, 643 F. Supp. 619 (N.D.N.Y. 1986); *Bennett v. Machined Metals Co., Inc.*, 591 F. Supp. 600 (E.D. Pa. 1984) and *Lewart v. Woodhull Care Ctr. Assocs.*, 549 F. Supp. 879 (S.D.N.Y. 1982)). Given the absence of facts supporting this conclusion, SPT's contention is unpersuasive.

[18] As Renco observes, SPT cites a number of other cases that did not involve a dispute over the interest-rate applicable to overdue withdrawal liability. *See, e.g., Board of Trustees of Dist. No.*

Given the plan's omission of an interest-rate for withdrawal liability, the Court must determine what rate should apply. Renco urges that, pursuant to PBGC regulations, the prime rate should be utilized, pursuant to 29 C.F.R. § 4219.32(b). The alternative is to use the rate prescribed under section 6621 of Title 26, as set forth in 29 U.S.C. § 1132(g)(2). Both rationales have been utilized in this context. As one district court observed:

> Courts have approved both approaches in the absence of a plan that dictates the applicable interest rate. *Compare Trs. of the United Teamster Pension Fund v. Juniors Produce Inc.*, No. 15-CV-6927, 2016 WL 4995023, at *5 (E.D.N.Y. Aug. 31, 2016) (applying the statutory default rate provided in 29 U.S.C. § 1132(g)(2)(E) where the plan documents and collective bargaining agreement did not set forth an interest rate to calculate withdrawal liability), *report and recommendation adopted*, 2016 WL 4995154 (Sept. 16, 2016), *with Bd. of Trs. of UFCW Local 342 Pension Fund v. Merrick Associated Market, Inc.*, No. 11-CV-4310, 2012 WL 4049845, at *4 (E.D.N.Y. Aug. 21, 2012) (applying PBGC interest rate where "no plan document specifie[d] a particular interest rate for withdrawal liability"), *report and recommendation adopted*, 2012 WL 4049996 (Sept. 13, 2012), *and Bd. of Trs. of the UFCW Local 174 Pension Fund v. Jerry WWHS Co., Inc.*, No. 8-CV-2325, 2009 WL 982424, at *5 (E.D.N.Y. Apr. 10, 2009) (applying PBGC interest rates where the record did not include any information about the terms of the fund, because "the court may look only to the regulatory interest rate in computing interest") (adopting report and recommendation).

*Trustees of Local 813 Pension Tr. Fund v. Frank Miceli Jr. Contracting, Inc.*, 2017 WL 972104, at *1 n.2 (E.D.N.Y. Mar. 13, 2017).

In resolving this issue, the Court finds persuasive the analyses in *GCIU-Employer Retirement Fund v. Quad/Graphics, Inc.*, 2017 WL 1903102 (C.D. Cal. May 8, 2017) ("*Quad/Graphics*"). While this Court does <u>not</u> agree with that decision's suggestion that a plan's

---

15 *Machinists' Pension Fund v. Kahle Eng'g Corp.*, 43 F.3d 852 (3d Cir. 1994); *Carriers Container Council, Inc. v. Mobile S.S. Ass'n*, 948 F.2d 1219 (11th Cir. 1991); *Steelworkers Pension Trust v. Universal Stainless & Alloy Prods., Inc.*, No. 18-303 (W.D. Pa. June 11, 2018) (default judgment); *Bernarding v. Miracle Steel, Inc.*, No. 18-950 (W.D. Pa. Aug. 23, 2018) (same). These cases are inapposite.

delinquent-payment interest rate should be applied in the absence of a comparable interest rate for withdrawal liability, the *Quad/Graphics* Court alternatively discussed the interest rate(s) that might otherwise apply. It concluded that applying the § 4219.32 interest rate is not a logical step, when specific guidance is provided in § 1132(g)(2), and when overdue payments are sought *through the course of litigation rather than before its commencement*:

> [T]he Court is not convinced that it should look to 29 C.F.R. § 4219.32 for the interest rate. Section 1132(g)(2) expressly directs the Court to look to 26 U.S.C. § 6621 to calculate the interest owed in the absence of any applicable interest rate in the plan, *not* 29 C.F.R. § 4219.32. *See* 29 U.S.C. § 1132(g)(2). While some courts have nonetheless applied the interest rate under § 4219.32 in actions to recover delinquent withdrawal payments, . . . the Court cannot find any [legal precedent] that convincingly explains why [we] should apply § 4219.32 where the plain language of § 1132(g)(2) directs otherwise. Rather, it appears . . . that the interest calculation under § 4219.32 applies only where overdue withdrawal payments are collected before litigation commences. Once the Fund is forced to file an action to collect delinquent interim payments and obtains a judgment for such payments, the harsher remedies under § 1132(g)(2) apply. This is in keeping with the broader purpose of § 1132(g)(2) to discourage unnecessary litigation by the employer. *See United Auto. Workers Local 259 Soc. Sec. Dep't v. Metro Auto Ctr.*, 501 F.3d 283, 295 (3d Cir. 2007) ("§ 1132(g)(2) was enacted to encourage employers to make timely contributions, assist plans in their recovery of delinquent contributions, and discourage excessive litigation by defendants").

2017 WL 1903102, at *5-6 (footnote omitted).[19] *See also Utrecht v. Diamond Lake, Inc.*, 2017 WL 6734178, at *6 nn.7, 9 (D. Minn. Dec. 29, 2017) (following *Quad/Graphics*); *Carriers Container Council, Inc. v. Mobile S.S. Ass'n, Inc. Int'l Longshoreman's Ass'n AFL-CIO Pension Plan and Trust*, 948 F.2d 1219, 1226 (11th Cir. 1991) (affirming district court's conclusion that § 1132(g)(2) controls payment pursuant to a court judgment against an employer,

---

[19]  The court rejected the suggestion in *Carpenter Trust Fund v. JKJ, Inc.* (cited *supra*) that "§ 4219.32 is . . . more specific than § 1132(g)(2)"; and it determined, rather, that §1132(g)(2) is more specific, because it applies when withdrawal payments are delinquent and an action has been filed to recover them, whereas § 4219.32 applies when the payments simply are "overdue." *Id.* at 5 n.8.

and § 1399(c)(3) applies when legal action is not required).

In this case, the Court concludes that, in the absence of an explicit interest-rate applicable to withdrawal liability, the appropriate rate is that set forth in § 6621(a)(2).

SPT's actuary prepared interest-calculations using § 6621(a)(2), resulting in the sum of $8,701,865.00, assuming that Renco paid the balance of the principal on May 10, 2019, as the parties agreed. (Supp. Benjaminson Decl. ¶ 12.)[20] Renco has not challenged this calculation. Therefore, the Court will apply § 6621(a)(2) and require Renco to pay interest in the amount of $8,701,865.00.

Having so concluded, the Court also must calculate the penalty Renco owes to SPT under §1132(g)(2)(C), which states that the award shall include the greater of interest or liquidated damages provided-for under the plan. SPT has calculated the amount of liquidated damages (based on the delinquent-contributions provisions) at $9,187,727.60. (ECF No. 75 at 14-15.) Renco contends that, given the plan's silence regarding the amount to assess for withdrawal liability, the double-interest penalty is the only provision available.[21] The Court agrees and, accordingly, the resulting sum, under 1132(g)(2)(C), is $17,403,730.00 (*i.e.*, $8,701,865.00 x 2).

Consistent with the foregoing, the Court hereby enters the following:

## II. <u>ORDER</u>

Plaintiff's Motion for Summary Judgment (**ECF No. 73**) is **GRANTED IN PART AND DENIED IN PART,** consistent with the analyses in the above Memorandum. Defendants' total

---

[20] ECF No. 82 Ex. D.

[21] SPT contends that Renco does not appear to challenge its liquidated damages calculations. (ECF No. 80 at 18 n.10.) However, Renco stated only that, if the Court finds that the provisions of the Declaration of Trust should be applied, then SPT should be limited to the 10% rate for liquidated damages, consistent with SPT's Complaint.

liability for interest, attorney's fees and costs is **$17,774,771.00**.  Said amount comprises the interest owed pursuant to 26 U.S.C. § 6621(a)(2), which is **$8,701,865.00**; the double interest penalty owed pursuant to 29 U.S.C. § 1132(g)(2)(C)(i), *i.e.*, another **$8,701,865.00**; and **$371,041.00** in reasonable attorney's fees and costs owed pursuant to 29 U.S.C. § 1132(g)(2)(D).

**JUDGMENT is entered, in favor of Plaintiff and against Defendants, in the aforementioned amounts**.  A Rule 58 order will be entered contemporaneously herewith, and the case will be marked closed.

      IT IS SO ORDERED.


September 30, 2019                            s/Cathy Bissoon         
                                                Cathy Bissoon
                                                United States District Judge

cc (via ECF email notification):

All Counsel of Record